IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:22-CT-3448-FL

| | |
|---|---|
| NATHANIEL R. WEBB, | ) |
| Plaintiff, | ) |
| v. | ) ORDER |
| TEXTBEHIND, | ) |
| Defendant. | ) |

This matter is before the court on defendant's motion for summary judgment pursuant to Federal Rule of Civil Procedure 56 (DE 43), and notices of proposed sealed exhibits (DE 46, 62). The motion for summary judgment has been briefed fully and in this posture the issues raised are ripe for ruling.

## STATEMENT OF THE CASE

Plaintiff, a state inmate proceeding pro se, commenced this action by filing complaint on February 2, 2022, asserting claims under North Carolina's Unfair and Deceptive Trade Practices Act. Defendant TextBehind is a business entity that provides scanned copies of private mail sent to inmates in custody of the North Carolina Department of Adult Corrections ("DAC"). Plaintiff alleges that when DAC began using defendant to process inmate mail, his mail was delayed or lost by defendant. Plaintiff further asserts that the scanned images of the mail are blurred and otherwise defective, and that defendant provides deficient services to force inmates or their family and friends to pay for more expensive electronic messages. As relief, plaintiff seeks compensatory and punitive damages and various forms of injunctive relief.

Following a period of discovery, and in accordance with the court's case management order, defendant now moves for summary judgment. Defendant argues that plaintiff's claims lack evidentiary support and that it is therefore entitled to judgment as a matter of law. In support of the motion, defendant relies upon memorandum of law, statement of material facts, and appendix of exhibits thereto comprising the following: 1) DAC policies and procedures; 2) defendant's memorandum of understanding with DAC; 3) scans of plaintiff's mail; 4) metrics excel sheet showing defendant's processing times for inmate mail; 5) declaration of Zia Rana ("Rana"), the chief executive officer of defendant; 6) defendant's discovery requests; 7) plaintiff's responses to defendant's discovery requests; and 8) correspondence between the parties regarding discovery.

Plaintiff responded in opposition to the motion, relying on memorandum of law, responsive statement of facts, and appendix of exhibits comprising the following: 1) scans of plaintiff's and other inmates' mail; 2) commercial advertisement published by defendant; 3) plaintiff's declaration; 4) joint declaration of witnesses Christopher E. Crouse and Jeffery Clement, both of whom were DAC inmates during the relevant time period; 5) correspondence between plaintiff and the Penal Law project; and 5) plaintiff's mail delivery timeline. Defendant replied in further support of the motion, relying upon supplemental affidavit of Rana and attached exhibits showing scans of plaintiff's mail.

Defendant also filed notices of proposed sealed filings indicating that plaintiff may wish to seal exhibits filed in support of the motion for summary judgment that include his personal mail. Plaintiff did not respond to these notices, or request sealing of the mail that he filed as exhibits to his response.

**STATEMENT OF FACTS**

Except as otherwise noted below, the court recounts the facts in the light most favorable to plaintiff. Plaintiff has been incarcerated for approximately seven years in either DAC or pretrial detention facilities. (See Pl's Decl. (DE 50-4) at 40).[1] From 2016 to 2020, standard mail processing times averaged one to three days, representing the amount of time it takes to receive mail from family, friends, or other third parties outside the correctional facilities. (Id.).

In 2021, DAC changed its mail processing procedures to require scanning personal mail at an offsite facility and delivery of electronic or hard copies to inmates. (Id.; Rana Decl. (DE 46-5) ¶ 4). The policy change was enacted to prevent the introduction of contraband into DAC facilities through inmate mail. (Rana Decl. (DE 46-5) ¶ 1).

Pursuant to memorandum of understanding between defendant and DAC, defendant is now responsible for scanning personal mail sent to DAC inmates and transmitting electronic copies to correctional facilities for delivery to inmates. (Rana Decl. (DE 46-5) ¶¶ 3–4; Def's Ex. 2 (DE 46-2)). Generally, the process works as follows. The inmate's family or friends, or other third parties who wish to communicate with the inmate, send mail to defendant. (Rana Decl. (DE 46-5) ¶¶ 3–6). Defendant then inspects the letters for contraband and other issues and assuming none is found it scans the mail and transmits same to DAC officials for final inspection. (Id. ¶ 6). After DAC officials complete their inspection and approve the mail, DAC staff "either print onsite and deliver it physically to the inmate, or make it electronically available to inmates on their personal tablet computers. (Id. ¶ 6; see also Pl's Exs. 1–5 (DE 50-4) at 1–31). Defendant does

---

[1] Throughout this order, page numbers in citations to documents in the record are to the page number specified in the footer of the document supplied by the court's case management / electronic case filing (CM/ECF) system for the docket entry (DE) and not the page number, if any, showing on the face of the underlying document.

3

not process legal mail, mail from DAC officials to the inmate, or mail from medical providers. (Rana Decl. (DE 46-5) ¶ 4). Separately, defendant offers electronic messaging service in which individuals can transmit electronic messages and attachments to inmates for a fee. (Id. ¶ 7).

In public advertising, defendant states that its electronic messaging service is "far more convenient and affordable than a postage stamp" and that scanned images of inmate mail are "high quality." (Pl's Ex. 9 (DE 50-4) at 33). According to plaintiff, "since mail began going through [defendant] in 2021, it began taking double, triple, and even longer [time periods] to receive mail from the same previous sources as in years prior." (Pl's Decl. (DE 50-4) at 40; Crouse & Clement Decl. (DE 50-4) ¶¶ 1–2). The scanned images "are blurred and low quality." (Pl's Decl. (DE 50-4) at 40; Crouse & Clement Decl. (DE 50-4) ¶ 3). Moreover, some mail has not been received, while other mail was returned to sender with no reason stated. (Pl's Decl. (DE 50-4) at 40). The delayed processing time and low-quality images "has created hardships in familial communication." (Crouse & Clement Decl. (DE 50-4) ¶ 4). Finally, plaintiff's wife cannot wait the lengthy time periods now required to send mail to plaintiff, and she thus "has been forced to send [mail] electronically at a cost of $1.29 per document image." (Pl's Decl. (DE 50-4) at 40).

## DISCUSSION

A.  Motion for Summary Judgment

   1.  Standard of Review

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it

believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the moving party has met its burden, the non-moving party must then "come forward with specific facts showing that there is a genuine issue for trial." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586–87 (1986).[2]

Only disputes between the parties over facts that might affect the outcome of the case properly preclude entry of summary judgment. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48 (1986) (holding that a factual dispute is "material" only if it might affect the outcome of the suit and "genuine" only if there is sufficient evidence for a reasonable jury to return a verdict for the non-moving party). "[A]t the summary judgment stage the [court's] function is not [itself] to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Id. at 249. In determining whether there is a genuine issue for trial, "evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in [non-movant's] favor." Id. at 255; see United States v. Diebold, Inc., 369 U.S. 654, 655 (1962) ("On summary judgment the inferences to be drawn from the underlying facts contained in [affidavits, attached exhibits, and depositions] must be viewed in the light most favorable to the party opposing the motion.").

Nevertheless, "permissible inferences must still be within the range of reasonable probability, . . . and it is the duty of the court to withdraw the case from the [factfinder] when the necessary inference is so tenuous that it rests merely upon speculation and conjecture." Lovelace v. Sherwin–Williams Co., 681 F.2d 230, 241 (4th Cir. 1982). Thus, judgment as a matter of law is warranted where "the verdict in favor of the non-moving party would necessarily be based on

---

[2] Throughout this order, internal citations and quotation marks are omitted from citations unless otherwise specified.

5

Case 5:22-ct-03448-FL    Document 63    Filed 09/18/24    Page 5 of 14

speculation and conjecture." Myrick v. Prime Ins. Syndicate, Inc., 395 F.3d 485, 489 (4th Cir. 2005). By contrast, when "the evidence as a whole is susceptible of more than one reasonable inference, a [triable] issue is created," and judgment as a matter of law should be denied. Id. at 489–90.

2. Analysis

Plaintiff asserts two claims in this action: false advertising and predatory business practices under North Carolina's Unfair and Deceptive Trade Practices Act ("UDPTA"). North Carolina declares as unlawful "[u]nfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce." N.C. Gen. Stat. § 75-1.1(a). "In order to establish a prima facie claim for unfair trade practices, a plaintiff must show: (1) defendant committed an unfair or deceptive act or practice, (2) the action in question was in or affecting commerce, and (3) the act proximately caused injury to the plaintiff." Dalton v. Camp, 353 N.C. 647, 656 (2001). "A practice is unfair when it offends established public policy as well as when the practice is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers." See Gray v. N.C. Ins. Underwriting Ass'n, 352 N.C. 61, 68 (2000). "To prevail on an UDTPA claim, plaintiffs must demonstrate some type of egregious or aggravating circumstances." Champion Pro Consulting Group, Inc. v. Impact Sports Football, LLC, 845 F.3d 104, 109 (4th Cir. 2016). A trade practice "is deceptive if it has a tendency to deceive." Dalton, 353 N.C. at 656.

Plaintiff's evidence cannot satisfy these elements.[3] As to the alleged false advertisement, plaintiff relies in part on defendant's statement that the scanned images of his mail would be "high

---

[3] The court does not reach defendant's alternative argument that plaintiff's evidence submitted in response to the instant motion should be excluded from consideration because plaintiff did not produce it during discovery.

6

Case 5:22-ct-03448-FL   Document 63   Filed 09/18/24   Page 6 of 14

quality." (Pl's Ex. 9 (DE 50-4) at 32–33). Plaintiff argues his exhibits show the scanned mail received from defendant are blurred and low quality. Defendant counters that the evidence submitted compels the opposite conclusion: that each of the scanned images is indeed consistent with its statement that images are "high quality."

As a threshold issue, the court notes the scanned copies of plaintiff's correspondence filed on the docket (DE 50-4) are not exact replicas of the exhibits plaintiff submitted for filing. Where plaintiff is an inmate proceeding pro se, this court's local rules require that he mail his filings to the court, which court staff then scan and upload to the docket. Local Civ. R. 5.1(f) (E.D.N.C.). The images in the court's electronic record therefore are scanned copies of the originals plaintiff sent to the court. See id. And some of the court's scans did not capture the full quality of the images that plaintiff submitted as hard copies to the court. (See, e.g., Pl's Exs. 3, 6, 7, 8 (DE 50-4) at 11, 22–28, 31; compare originals on file in the clerk's office).

When reviewing the originals of these filings, with one exception, the images are sufficiently clear and readable, and only slightly blurred relative to the comparators that plaintiff filed. (See, e.g., Pl's Exs. 6, 7, 8 (DE 50-4) at 22–28, 31; originals on file in the clerk's office). Most of these images therefore do not support plaintiff's assertion that the images are blurred or otherwise suffer from quality problems. (See, e.g., Pl's Exs. 6, 7 (DE 50-4) at 22–28; originals on file in the clerk's office). The one exception is exhibit 8, which is unclear on the original as well as the court's scanned copy. (DE 504 at 31 & original on file). But even if this is the

---

Notably, defendant did not file separate motion for sanctions requesting such relief, as required by Federal Rule of Civil Procedure 37(d). And to the extent defendant relies on the sanctions set forth in Rule 37(c), that rule only applies to the failure to serve initial or supplemental disclosures under Rule 26(a) or (e). Fed. R. Civ. P. 37(c); S. States Rack And Fixture, Inc. v. Sherwin-Williams Co., 318 F.3d 592, 595–96 (4th Cir. 2003). Because plaintiff is incarcerated and proceeding pro se, he is not required to serve initial disclosures under Rule 26. See Fed. R. Civ. 26(a)(1)(B)(iii).

original document plaintiff received from defendant,[4] one unclear image cannot show a triable issue of fact as to plaintiff's claim that defendant consistently provided low quality images despite advertising to the contrary. To establish a UDPTA claim, plaintiff needs to provide evidence of immoral, unscrupulous, or substantially injuries practices, and one unclear image does not meet this standard. See Gray, 352 N.C. at 68; Champion Pro Consulting Group, 845 F.3d at 109. Plaintiff's exhibits therefore do not establish a claim for UDTPA false advertising.

Plaintiff also relies upon his own and third-party witness declarations to support his claim that the images received are low quality. As noted above, plaintiff attests that "images coming through [defendant] are blurred and low quality." (Pl's Decl. (DE 50-4) at 40). Crouse and Clement, the inmate witnesses, similarly state that the images are "blurred and low quality." (Crouse & Clement Decl. (DE 50-4) at 43). But as explained above, the exhibits plaintiff filed in response to the motion for summary judgment do not support these conclusory statements. (See, e.g., Pl's Exs. 6, 7, 8 (DE 50-4) at 22–28, 31, and originals on file in the clerk's office)). Without record evidence in support, plaintiff and the witnesses' conclusory assertions are insufficient to establish a triable issue of fact on the false advertising claim. Wai Man Tom v. Hosp. Ventures LLC, 980 F.3d 1027, 1037 (4th Cir. 2020) ("[C]onclusory allegations or denials, without more, are insufficient to preclude granting the summary judgment motion."); Evans v. Techs. Applications & Serv. Co., 80 F.3d 954, 960 (4th Cir. 1996) (explaining "unsubstantiated allegations and bald assertions" cannot defeat a motion for summary judgment). Accordingly, a

---

[4] Defendant provided alternative image on reply that is higher quality than the printed image plaintiff submitted to the court and argues that this is the image plaintiff actually received. (Def's Reply (DE 51) at 10; Def's Ex. 6 (DE 58)). The court, however, must adopt plaintiff's version of the evidence when deciding the instant motion. Anderson, 477 U.S. at 248.

reasonable jury could not find for plaintiff on his UDTA false advertising claim based on the quality of the images received.

Next, plaintiff alleges defendant engaged in unfair and deceptive trade practices by delaying his mail. Defendant, however, submits uncontradicted evidence that the average mail processing time, including the time it takes to reach defendant through the postal service, is approximately 9 days. (Rana Aff. (DE 46-5) ¶¶ 8–9; Def's Ex. 4 (DE 46-4)). In addition, the bulk of this time is due to delays at the postal service, with processing time at defendant taking approximately 1.5 days on average. (Rana Aff. (DE 46-5) ¶¶ 8–9; Def's Ex. 4 (DE 46-4)).

There is no support in the record for plaintiff or the witnesses' conclusory assertions that mail is delayed for weeks at a time based on the shift to scanned images through defendant's system. (Pl's Decl. (DE 50-4) at 40 (plaintiff attesting that "since mail began going through [defendant's processing service] it began taking double, triple, and even longer wait times" relative to the one to three days using the regular postal service); Crouse & Clement Decl. (DE 50-4) at 43 (attesting to delays "in excess of two weeks" after defendant began processing mail)). As noted above, plaintiff cannot rely upon these conclusory statements to create a triable issue of fact. Wai Man Tom, 980 F.3d at 1037; Evans, 80 F.3d at 960.

Plaintiff offers only one example of a mailing that took several months to arrive. (Pl's Ex. 13 (DE 50-4) at 45). But even assuming that this delay was attributable to defendant, that one instance of delayed mail does not rise to the level of an unfair and deceptive business practice, particularly in the absence of evidence showing that the delay was anything more than administrative error. See Gray, 352 N.C. at 68; Champion Pro Consulting Group, 845 F.3d at 109.

9

The court also cannot find an unfair or deceptive practice on the basis of average processing time of 1.5 days, the only additional time attributable to defendant. (Rana Aff. (DE 46-5) ¶¶ 8–9; Def's Ex. 4 (DE 46-4)). Defendant is responsible for receiving the mail from the postal service, searching it for contraband, and then uploading it to an electronic system for DAC to deliver it to plaintiff. (Rana Aff. (DE 46-5) ¶¶ 6, 8–9). Such activities necessarily require slightly longer processing time of mail than what plaintiff may have experienced in the past, but that does not standing alone establish an unfair or deceptive business practices under the standard set forth above. Dalton, 353 N.C. at 656. Accordingly, defendant is entitled to judgment as a matter of law as to the UDTPA claim premised on delayed mail.

Plaintiff also claims that some of his mail was lost. But he provides no evidence in support of this claim, other than his conclusory assertions. (See Pl's Decl. (DE 50-4) at 40; Pl's SOMF (DE 50-2) ¶ 52). That is insufficient to withstand summary judgment for the reasons explained above. Wai Man Tom, 980 F.3d at 1037; Evans, 80 F.3d at 960. Plaintiff also does not show that defendant was responsible for any lost mail. See Dalton, 353 N.C. at 656 (noting UDTPA claim requires evidence of causation).

Finally, plaintiff asserts that he and his wife were forced to pay $1.29 to send plaintiff photographic images of a rental agreement. (See Pl's Decl. (DE 50-4) at 40; Pl's Ex. 8 (DE 50-4) at 29–31; Pl's Resp. (DE 50-1) at 4). According to plaintiff, his wife used the electronic service because delivery to plaintiff was time sensitive, and she could not use regular mail due to the alleged additional delays using defendant's service. (Pl's Resp. (DE 50-1) at 4, 5–6). Plaintiff argues that defendant engages in predatory business practices by in effect forcing inmates to use

10

the paid electronic messaging service due to the delayed processing time for regular mail and the low quality of the images. (Pl's Resp. (DE 50-1) at 5–6).

As explained above, plaintiff fails to offer evidence showing that the mail was delayed significantly beyond the standard mail processing times for inmates, or that the images consistently were unclear. It necessarily follows that inmates' families are not "forced" to use paid electronic messaging to communicate with inmates. Plaintiff's wife elected to pay $1.29 to use the electronic messaging system on one occasion to transmit a time sensitive document to plaintiff. (Pl's Resp. (DE 50-1) at 4, 5–6; Pl's Decl. (DE 50-4) at 40). But electronic delivery will always be more convenient and faster than standard postal mail. The fact that defendant charges a fee for those services does not amount to an unfair and deceptive trade practice under the standard set forth above. See Dalton, 353 N.C. at 656–57; Champion Pro Consulting Group, 845 F.3d at 110 (rejecting UDTPA claim where the practice "is indicative of the industry in which these parties operate").

Plaintiff also asserts this claim under a false advertising theory. Plaintiff relies on defendant's advertisement stating that its electronic messaging service "is far more convenient and affordable than a postal stamp," arguing this statement was untrue in this one instance, where plaintiff's wife paid $1.29 to send him the rental agreement. (Pl's App. Ex. 9 (DE 50-4) at 32–33). According to Rana, the cost of one-ounce piece of first-class mail is $0.66, and thus plaintiff was charged approximately twice that amount to send the photographs of the agreement. (Rana Decl. (DE 46-5) ¶ 7).

In order to establish a false advertising claim, plaintiff must first show that the statement at issue is false or misleading. Dalton, 353 N.C. at 656. Plaintiff, however, fails to offer

11

evidence showing that the rental agreement could have been transmitted using regular mail for less than the cost of two stamps. (See, e.g., Pl's Decl. (DE 50-4) at 40). In addition, even if the court assumes defendant overcharged plaintiff's wife for sending the electronic mail in this one instance, by approximately $0.60, that is insufficient standing alone to establish the "egregious" or "aggravating" circumstances necessary to sustain this claim. Dalton, 353 N.C. at 656–57; Champion Pro Consulting Group, 845 F.3d at 109. Indeed, beyond this one instance, plaintiff offers no evidence suggesting that his family or any other third parties were overcharged for sending electronic messages. Accordingly, the court grants the motion for summary judgment as to plaintiff's claims based on the electronic messaging service.

In his response brief, plaintiff invokes the Sherman Act and the Uniform Commercial Code ("UCC") as the legal basis for his claims. Even construing plaintiff's complaint in the broadest possible terms, defendant was not placed on notice of any Sherman Act or UCC claim. See Fed. R. Civ. P. 8(a). For example, plaintiff does not remotely suggest in the complaint that defendant possessed monopoly power, as required for a Sherman Act claim. See E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc., 637 F.3d 435, 441 (4th Cir. 2011); (DE 1). Nor did plaintiff plead facts consistent with a UCC claim, which requires allegations showing the parties engaged in a "transactions in goods" as opposed to the provision of services. See N.C. Gen. Stat. § 25-2-102. Instead, plaintiff expressly relied upon North Carolina law governing false advertising and predatory business practices, which are claims under the UDTPA. (DE 1). And plaintiff cannot amend his pleadings by asserting new claims in response to a motion for summary judgment. See Southern Walk at Broadlands Homeowner's Ass'n, Inc. v. OpenBand at Broadlands, LLC, 713

12

F.3d 175, 184 (4th Cir. 2013). The court therefore will not consider plaintiff's new claims asserted for the first time in his response brief.

In sum, plaintiff fails to offer evidence creating a triable issue of fact on his UDTPA claims. And his attempt to assert claims under the Sherman Act or the UCC are procedurally improper. Defendant therefore is entitled to judgment as a matter of law.

B.   Notices of proposed sealed filings

Defendant filed several documents under proposed seal containing plaintiff's correspondence with various third parties. (See DE 47, 53, 54, 55, 56, 57, 58, 59, 60, 61). The accompanying notices of filing were filed pursuant to Local Civil Rule 79.2 and section V(G)(1)(e) of the court's CM/ECF policy manual. The policy manual provides instructions for filing proposed sealed documents for which another party may wish to file a motion to seal. See CM/ECF Policy Manual § V(G)(1)(e) (E.D.N.C.). The manual provides that a party seeking to seal material filed in this manner must file a motion to seal within seven days of service of the notice. Id. Here, plaintiff does not seek to seal these records, and he publicly filed similar correspondence in his response to the motion to summary judgment. Accordingly, these documents will be unsealed.

## CONCLUSION

Based on the foregoing, defendant's motion for summary judgment (DE 43) is GRANTED. The clerk is DIRECTED to close this case and unseal the exhibits at docket entries 47, 53, 54, 55, 56, 57, 58, 59, 60, and 61.

SO ORDERED, this the 18th day of September, 2024.

                                                _____
                                                LOUISE W. FLANAGAN
                                                United States District Judge